**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| JAMES A. REDMOND, | ) | |
| | ) | |
| Debtor. | ) | Case No. 08 C 961 |
| JAMES A. REDMOND, | ) | |
| | ) | Appeal from the United States Bankruptcy Court |
| Appellant, | ) | for the Northern District of Illinois |
| | ) | Case No. 96 B 03162 |
| v. | ) | Hon. Eugene Wedoff, Judge Presiding |
| | ) | |
| FIFTH THIRD BANK, f/k/a | ) | Hon. Blanche M. Manning |
| PINNACLE BANK, | ) | |
| | ) | |
| Appellee. | ) | |

**BRIEF OF DEBTOR-APPELLANT JAMES A. REDMOND**

David P. von Ebers  (A.R.D.C. No. 6196337)
Help-U-Settle Attorneys, Chtd.
1034 Pleasant Street
Oak Park, Illinois  60302
(708) 386-4900

## TABLE OF POINTS AND AUTHORITIES

**Page**

STATEMENT OF APPELLATE JURISDICTION                                          1

ISSUES PRESENTED ON APPEAL                                                   1

STATEMENT OF THE CASE                                                        3

I.   PROCEDURAL HISTORY OF THE CASE                                          3

II.  STATEMENT OF FACTS                                                      5

ARGUMENT                                                                     12

11 U.S.C. § 350(b)                                                          12

Fed. R. Bankr. P. 9024                                                      12

Fed. R. Civ. P. 60(b)                                                       12

I.   THE BANKRUPTCY COURT ERRED IN DENYING REDMOND'S
     MOTION TO REOPEN AND IN DENYING REDMOND LEAVE TO
     FILE HIS MOTION FOR SANCTIONS AGAINST PINNACLE.                        12

*Pettibone Corp. v. Hawxhurst*, 163 B.R. 989, 996 (N.D. Ill. 1994)          12

A.   The Bankruptcy Court Failed to Follow the District Court's
     Instructions on Remand.                                                13

*In re James A. Redmond*, No. 06 C 4503 (N.D. Ill.), District Court's
Memorandum and Order dated July 13, 2006, pp, 6-7                           13

*In re Barton*, 359 B.R. 681, 686-88 (Bankr. N.D. Ill. 2006)                14

*In re Sullivan*, 367 B.R. 54 (Bankr. N.D. N.Y. 2007)                       15 n. 1

B.   The Bankruptcy Court Denied Redmond the Opportunity to be
     Heard on the Very Issues Addressed in Its December 20, 2007
     Memorandum Opinion.                                                     19

*In re Barton*, 359 B.R. 681 (Bankr. N.D. Ill. 2006)                        20

|  |  | Page |
|---|---|---|
| | *In re Sullivan*, 367 B.R. 54 (Bankr. N.D. N.Y. 2007) | 20 |
| **C.** | **The Bankruptcy Court Abused Its Discretion by Ruling on the Underlying Motion for Sanctions.** | 22 |
| | *In re Lopez*, 283 B.R. 22, 26-27 (9th Cir. BAP 2002) | 22 |
| | *In re Abbott*, 183 B.R. 198, 200 (9th Cir. BAP 1995) | 22-23 |
| | *In re Venuto*, 343 B.R. 120, 124-25 (Bankr. E.D. Pa. 2006) | 23 |
| **D.** | **The Bankruptcy Court Abused Its Discretion by Denying Redmond a Full and Fair Hearing on the Motion for Sanctions.** | 23 |
| | *In re Lopez*, 283 B.R. 22, 26-27 (9th Cir. BAP 2002) | 24 |
| | *In re Venuto*, 343 B.R. 120 (Bankr. E.D. Pa. 2006) | 24, 24 n. 2 |
| | *In re Abbott*, 183 B.R. 198 (9th Cir. BAP 1995) | 24-25 |
| **E.** | **The Bankruptcy Court Deprived Redmond of Due Process of Law by Denying Redmond a Full and Fair Hearing on the Motion for Sanctions.** | 25 |
| | *Halas v. Platek*, 239 B.R. 784, 792 (N.D. Ill. 1999) | 25 |
| **II.** | **THE BANKRUPTCY COURT ERRED IN DETERMINING THAT THE CIRCUIT COURT OF COOK COUNTY HAS JURISDICTION TO HEAR ANY REMAINING ISSUES ARISING OUT OF REDMOND'S BANKRUPTCY.** | 26 |
| | 11 U.S.C. § 362(h) | 26 |
| | *Halas v. Platek*, 239 B.R. 7784, 792 (N.D. Ill. 1999) | 26 |
| | **CONCLUSION** | 27 |

## STATEMENT OF APPELLATE JURISDICTION

Debtor-Appellant, JAMES A. REDMOND ("Redmond"), brings this appeal of an Order entered December 20, 2007, by U.S. Bankruptcy Judge Eugene Wedoff (Bankruptcy Docket Nos. 141 and 142), denying Redmond's Motion to Reopen his Chapter 13 Case and for Leave to File Motion for Sanctions Against Fifth Third Bank (the "Motion to Reopen") (Bankruptcy Docket No. 114). On January 2, 2008, Redmond timely filed with the Clerk of the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division, his Notice of Appeal of Judge Wedoff's December 20, 2007 Order (Bankruptcy Docket No. 143), thereby conveying jurisdiction upon the District Court pursuant to Rule 8002 of the Federal Rules of Bankruptcy Procedure, Fed. R. Bankr. P. 8002.

## ISSUES PRESENTED ON APPEAL

I.     Whether the Bankruptcy Court erred in denying Debtor's Motion to Reopen, which consists of the following sub-issues:

(a)     Whether the Bankruptcy Court failed to follow the instructions given by the District Court upon remand from Debtor's prior appeal of the Bankruptcy Court's June 29, 2006 Order denying Debtor's Motion to Reopen;

(b)     Whether the Bankruptcy Court in denying Debtor's Motion to Reopen improperly made findings of fact and conclusions of law without providing Debtor an opportunity to present evidence or otherwise address the Bankruptcy Court's findings and conclusions;

(c)     Whether the Bankruptcy Court's denial of Debtor's Motion to Reopen constituted an improper ruling on the merits of Debtor's proposed Motion for Sanctions Against Fifth Third Bank;

(d)    Whether the Bankruptcy Court's denial of Debtor's Motion to Reopen Case deprived Debtor of the right to a hearing on the merits of Debtor's proposed Motion for Sanctions Against Fifth Third Bank; and

(e)    Whether the Bankruptcy Court's denial of Debtor's Motion to Reopen deprived Debtor of due process of law.

As to the first Issue on Appeal and the five (5) related sub-issues, the applicable standard of review is whether the Bankruptcy Court abused its discretion.

II.    Whether the Bankruptcy Court erred in determining that the state court can address any remaining issues involved in Debtor's bankruptcy, because the state court has no jurisdiction to hear and determine a motion for sanctions for violation of the automatic stay, Chapter 13 plan, or the order of discharge.

As to this issue, the standard of review is *de novo*.

<u>**STATEMENT OF THE CASE**</u>

**I.    <u>PROCEDURAL HISTORY OF THE CASE</u>**

On June 12, 2006, Redmond filed his Motion to Reopen pursuant to Section 350(b) of the United States Bankruptcy Code (the "Code"), 11 U.S.C. § 350(b), and Rule 9024 of the Federal Rules of Bankruptcy Procedure, Fed. R. Bankr. P. 9024. (Bankruptcy Docket No. 114).  In that Motion, Redmond requested that the Bankruptcy Court reopen his Chapter 13 bankruptcy case for purposes of filing a Motion for Sanctions against Appellee, FIFTH THIRD BANK, f/k/a PINNACLE BANK ("Pinnacle") (the "Motion for Sanctions"), a copy of which Motion for Sanctions was attached to the Motion to Reopen. (Bankruptcy Docket No. 114, Exhibit "A".) The Motion for Sanctions, in turn, alleged that Pinnacle violated the automatic stay entered upon the filing of Redmond's Chapter 13 case, violated an Agreed Order entered by the Bankruptcy Court on June 18, 1996 (the "June 18, 1996 Agreed Order"), violated Redmond's Chapter 13 Plan, and violated the permanent injunction entered in connection with Redmond's discharge pursuant to Sections 524 and 1328 of the Code, 11 U.S.C. §§ 524(a)(2) and 1328(a).

Redmond's counsel presented the Motion to Reopen to the Bankruptcy Court on June 29, 2006.  Counsel for Pinnacle also appeared at that hearing and objected to the Motion.  During the June 29 hearing, the Bankruptcy Court inquired into the merits of the proposed Motion for Sanctions, and then entered an Order denying Redmond's Motion to Reopen.  (Bankruptcy Docket No. 116.)  Redmond then filed an appeal of the Bankruptcy Court's June 29, 2006 Order. In that appeal, *In re James A. Redmond*, No. 06 C 4503 (N.D. Ill.), Redmond asserted that the Bankruptcy Court abused its discretion in denying Redmond's Motion to Reopen, in that the Bankruptcy Court improperly ruled on the merits of the proposed Motion for Sanctions in the context of denying the Motion to Reopen, denied Redmond a full and fair hearing on the

3

underlying Motion for Sanctions, and denied Redmond due process of law by denying Redmond a full and fair hearing on the Motion for Sanctions. Additionally, Redmond argued that the Bankruptcy Court erred by determining that any remaining issues arising out of Redmond's Chapter 13 case could be addressed by the state court in a pending mortgage foreclosure action brought by Pinnacle against Redmond.

On July 13, 2007, the District Court reversed the Bankruptcy Court's June 29, 2006 ruling and directed the Bankruptcy Court to consider whether Redmond has alleged that Pinnacle improperly sought to recover pre-petition indebtedness through the conduct challenged in his proposed Motion for Sanctions. (*See* Certified Copy of District Court's Memorandum and Order dated July 13, 2007, Bankruptcy Docket No. 131.) If so, the District Court reasoned, Redmond has set forth a basis for reopening his Chapter 13 case to determine whether Pinnacle violated Redmond's Chapter 13 Plan. (*Id.*) Because the District Court reversed the Bankruptcy Case on this basis, the District Court did not address the other issues raised by Redmond in his initial appeal. (*Id.*)

On December 20, 2007, on remand, the Bankruptcy Court issued a Memorandum Opinion – without conducting any further hearing with respect to Redmond's Motion to Reopen – pursuant to which it denied the Motion to Reopen. (Bankruptcy Docket Nos. 141 and 142.) Although the Bankruptcy Court did not conduct a hearing with respect to the Motion to Reopen, it nonetheless made "Findings of Fact" and concluded that Redmond had failed to set forth a basis to reopen his case. Specifically, the Bankruptcy Court reviewed Redmond's proposed Motion for Sanctions in detail and concluded that Pinnacle Bank did not violate the automatic stay, did not violate the June 18, 1996 Agreed Order, did not violate Redmond's Chapter 13 Plan, and did not violate the discharge injunction. The Bankruptcy Court further ruled that the

"appropriate forum" to address any remaining issues relating to the Chapter 13 case was in the pending state mortgage foreclosure action.  Lastly, and as an additional basis for denying Redmond relief, the Bankruptcy Court determined that Redmond's Motion to Reopen was not timely filed.

On January 2, 2008, Redmond timely filed his Notice of Appeal in the Bankruptcy Court (Bankruptcy Docket No. 143), thereby initiating this second appeal.

## II.     STATEMENT OF FACTS

The facts underlying this appeal are somewhat complex and are set forth in detail in the Motion for Sanctions Redmond sought leave to file from the Bankruptcy Court.  (Bankruptcy Docket No. 114, Exhibit "A".)  Redmond will endeavor to provide a brief summary here.  The underlying debt involved in this matter arose out of a Balloon Note and Mortgage executed by Redmond in favor of Pinnacle's predecessor in interest, Suburban Trust & Savings Bank, in 1993.  (Motion for Sanctions, p. 2, ¶ 4.)  The Balloon Note, in the principal amount of $60,000.00, required Redmond to make monthly payments of principal and interest in the amount of $614.02, with a balloon payment due on April 1, 1998.  (*Id.*)  The Balloon Note was secured by the Mortgage against Redmond's home.

In 1995, Pinnacle asserted that Redmond had defaulted under the terms of the Balloon Note and Mortgage, and commenced a mortgage foreclosure action against Redmond in the Circuit Court of Cook County, Illinois, captioned *Pinnacle Bank v. James Redmond, et al.*, Case No. 95 CH 5910 (the "1995 Mortgage Foreclosure Action"). (Motion for Sanctions, p. 2, ¶ 5.) On February 7, 1996, while the 1995 Mortgage Foreclosure Action remained pending, Redmond filed his Petition in the underlying Chapter 13 case.  (*Id.*)  Consequently, the 1995 Mortgage Foreclosure Action was stayed pursuant to Section 362 of the Code, 11 U.S.C. § 362(a).  (*Id.*)

On or about February 20, 1996, Pinnacle filed a Proof of Claim against Redmond in the Chapter 13 Case. (Motion for Sanctions, pp. 2-3, ¶ 6.)  In its Proof of Claim, Pinnacle sought to recover a total pre-petition debt of $13,317.25, which sum allegedly included twelve (12) months of pre-petition arrearages under the Balloon Note and Mortgage ($7,368.24); late charges ($188.37); "miscellaneous expenses" ($565.11); an alleged real estate tax escrow deficiency ($28.90); court costs ($774.13); and attorneys' fees allegedly incurred in connection with the 1995 Mortgage Foreclosure Action ($3,892.50); and attorneys' fees in connection with Redmond's Chapter 13 case ($500.00).   (*Id.*)

Redmond filed an objection to Pinnacle's claim, and, on June 18, 1996, the Bankruptcy Court entered an Agreed Order pursuant to which Pinnacle's claim was reduced from the original $13,317.25 to $10,810.73 for purposes of Redmond's Chapter 13 Plan.   Specifically, the Bankruptcy Court's July 18, 1996 Order reduced the amount of Pinnacle's claimed arrearage from twelve (12) months to eleven (11) months, or $6,754.22; and reduced Pinnacle's claim for attorneys' fees associated with the 1995 Mortgage Foreclosure Action from $3,892.50 to $2,000.00.   The June 18, 1996 Agreed Order then allowed Pinnacle's claim in the reduced amount. (Motion for Sanctions, pp. 3-4, ¶ 7, and Exhibit 2.)

Furthermore, the Bankruptcy Court's June 18, 1996 Agreed Order reinstated the automatic stay as to Pinnacle's claim and provided that the automatic stay would thereafter be modified as to Pinnacle in the event Redmond defaulted in the future and failed to cure the default upon notice as provided in the Agreed Order; and that the automatic stay would be lifted on April 1, 1998, the date the balloon payment came due under the Balloon Note and Mortgage. However, the Agreed Order also provided: "In the event of the modification of the stay as

outlined in this Order, Pinnacle Bank shall give notice to the Debtor, the Debtor's attorney and the trustee and shall file said Notice with the Court." (Motion for Sanctions, Exhibit 2, ¶ 8.)

At no time during the period from June 18, 1996 to April 1, 1998 did Pinnacle file or serve the requisite Notice under paragraph 8 of the June 18, 1996 Agreed Order indicating that the stay had been modified as to Pinnacle, nor did Pinnacle serve or file such Notice at anytime after April 1, 1998. Therefore, the automatic stay under Section 362 of the Code remained in effect as to Pinnacle. (Motion for Sanctions, p. 4, ¶ 10.)

Redmond's Chapter 13 Plan was confirmed on June 3, 1997, and, on May 4, 1999, Debtor was granted a discharge pursuant to Section 1328 of the Code. (Motion for Sanctions, p. 5, ¶ 11.)

Following the entry of the Bankruptcy Court's June 18, 1996 Agreed Order, Redmond continued to make current installment payments to Pinnacle as required by the Balloon Note and Mortgage. (Motion for Sanctions, p. 5, ¶ 12.) Additionally, from and after confirmation of Redmond's Chapter 13 Plan the Chapter 13 Trustee continued to make the requisite payments to Pinnacle on Pinnacle's pre-petition indebtedness in accordance with the June 18, 1996 Agreed Order. (*Id.*) Meanwhile, in anticipation of the April 1, 1998 balloon payment due Pinnacle, Redmond sought to obtain third-party re-financing of the Balloon Note and Mortgage during the months of December 1997 through March 1998. Ultimately, Redmond received a refinance loan commitment from Proficient Financial Services ("Proficient") in February 1998 in an amount sufficient to payoff the balance due Pinnacle under the Balloon Note and Mortgage and to payoff the remaining monies due to Redmond's Chapter 13 Trustee (of which $3,151.49 was due Pinnacle under the Chapter 13 Plan). (*Id.*, p. 5, ¶¶ 12-13.)

Upon receipt of Proficient's loan commitment in February 1998, Redmond began requesting payoff figures from Pinnacle Bank so that he could close on the refinance loan in time to make the balloon payment due Pinnacle on April 1, 1998. Initially, Pinnacle's counsel flatly refused to give Redmond payoff figures, stating that Redmond would not receive such information until April 1, 1998 – the date the balloon payment was due, and the date on which the automatic stay would be lifted as to Pinnacle under the June 18, 1996 Agreed Order. (Motion for Sanctions, p. 6, ¶¶ 14-15, and Exhibit 6.) When Redmond pressed for payoff information in sufficient time to close on the refinance loan and make the required balloon payment, Pinnacle submitted a payoff letter to Redmond dated March 3, 1998 (the "March 3, 1998 Payoff Letter") indicating a balance due as of April 1, 1998 in the amount of $67,180.17, including an alleged real estate tax escrow deficiency of $209.44 and a figure identified only as "Other Charges Due" of $970.11. (*Id.*, pp. 6-7, ¶¶ 16-17, and Exhibits 7 and 8.)

Redmond then demanded an explanation from Pinnacle for the real estate tax escrow deficiency and the "Other Charges Due" listed in the March 3, 1998 Payoff Letter. Pinnacle, however, failed to explain either figure. Instead, on March 19, 1998, Pinnacle submitted a second payoff letter (the "March 19, 1998 Payoff Letter") indicating a balance due as of April 1, 1998 in the total amount of $72,163.28, in which the "Other Charges Due" increased from $970.11 to $5,514.24. (Motion for Sanctions, p. 7, ¶ 17, and Exhibit 9.) Thereafter, Redmond made repeated demands for an explanation of the disputed items in the March 3, 1998 Payoff Letter and the March 19, 1998 Payoff Letter, but Pinnacle refused to provide Redmond any explanation. Redmond, therefore, was unable to close on the Proficient refinance loan and Proficient's loan commitment expired. (*Id.*, pp. 7-8, ¶¶ 18-22, and Exhibit 10.)

On July 1, 1998, after Redmond was unable to close on the Proficient refinance loan and was therefore unable to make the balloon payment due Pinnacle under the Balloon Note and Mortgage, Pinnacle filed a second mortgage foreclosure action in the Circuit Court of Cook County, Illinois, captioned *Pinnacle Bank v. James Redmond, et al.*, Case No. 98 CH 8665 (the "Pending Mortgage Foreclosure Action"), which action remains pending in the Circuit Court. (Motion for Sanctions, p. 8, ¶ 23.)

On July 12, 2005, Redmond presented to the Bankruptcy Court a motion captioned "Motion to Reopen Debtor's Chapter 13 Case, to Stay Pending [Mortgage Foreclosure Action], and for Leave to File a Motion to Enforce Debtor's Chapter 13 Plan and [the Bankruptcy] Court's Order of June 25 [sic], 1998" (Redmond's "Prior Motion to Reopen"). (*See* Motion to Reopen (Bankruptcy Docket No. 114), p. 2, ¶ 2.) In his Prior Motion to Reopen, Redmond argued that, through the foregoing conduct, Pinnacle had violated the Bankruptcy Court's June 18, 1996 Agreed Order and Redmond's Chapter 13 Plan, and sought a finding of the Bankruptcy Court to that effect. (*Id.*) Specifically, Redmond's Prior Motion to Reopen asserted that Pinnacle, through its payoff letters and through the Pending Mortgage Foreclosure Action, had attempted to recover sums it was precluded from recovering by the June 18, 1996 Agreed Order. (*Id.*)

The Bankruptcy Court, however, denied Redmond's Prior Motion to Reopen because it interpreted the Prior Motion to Reopen as a request to have the Bankruptcy Court determine the collateral estoppel effect of the June 18, 1996 Agreed Order for purposes of the Pending Mortgage Foreclosure Action. (Motion to Reopen, p. 2, ¶ 3.) The Bankruptcy Court held that the state court was the proper forum for determining the collateral estoppel effect of the June 18, 1996 Agreed Order, and stated: "If you [Redmond] were in a situation where you believed that

there was a violation of a discharge injunction, a violation by the parties of the automatic stay, this court would enforce its order against those parties." (Transcript of July 12 Hearing before Hon. Eugene Wedoff, p. 4., attached to Motion to Reopen as Exhibit "B".)

Following Judge Wedoff's July 12, 2005 ruling denying the Prior Motion to Reopen, Redmond filed a motion in the Pending Mortgage Foreclosure Action seeking leave of the state court to file a Motion for Partial Summary Judgment in which Redmond would present to the state court the issue whether Pinnacle had violated the June 18, 1996 Agreed Order entered by the Bankruptcy Court by seeking, in the Pending State Court Action, to recover sums over and above those approved by the Bankruptcy Court. (Motion to Reopen, p. 3, ¶ 5.) In response to Redmond's motion in the Pending Mortgage Foreclosure Action seeking leave to file a Motion for Partial Summary Judgment, Pinnacle filed a brief in which it disclosed, for the first time in seven (7) years of litigation in the state court, the specific sums Pinnacle had sought to recover from Redmond in the March 19, 1998 Payoff Letter (and in Pinnacle's initial Complaint in the Pending Mortgage Foreclosure Action), including identifying, for the first time, the basis on which Pinnacle sought to recover the disputed "Other Charges Due" of $5,514.24. (*Id.*, pp. 3-4, ¶¶ 6-7; Motion for Sanctions, pp. 9-10, ¶¶ 25-26, and Exhibit 11.)

Pinnacle's written response to Redmond's state court motion indicated that the "Other Charges Due" figure was comprised of $894.13 in court costs, of which $744.13 had been included in the Bankruptcy Court's June 18, 1996 Agreed Order and were to be paid to Pinnacle through Redmond's Chapter 13 Plan; "miscellaneous expenses" of $565.11, all of which had been included in the June 18, 1996 Agreed Order and were to be paid through the Chapter 13 Plan; and $4,055.00 in attorneys' fees. (Motion for Sanctions, pp. 9-10, ¶ 26, and Exhibit 11.) As to the last figure, Pinnacle's state court brief indicated that it included the $2,000.00 approved

10

by the Bankruptcy Court for attorneys' fees incurred in the 1995 Mortgage Foreclosure Action; the $500.00 approved by the Bankruptcy Court for fees in connection with the Chapter 13 Case; plus additional attorneys' fees in the amount of $1,555.00 incurred after entry of the June 18, 1996 Agreed Order. (*Id.*, p. 10, ¶ 27.)

However, in the Pending Mortgage Foreclosure Action, Pinnacle also produced fee statements from its attorneys plus redacted correspondence between it and its attorneys which belied the assertions Pinnacle now claimed. (Motion for Sanctions, pp. 10-11, ¶¶ 28-29, and Exhibits 12 and 13.)   In fact, both the time records and the redacted correspondence establish that the $4,055.00 in attorneys' fees now being sought included fees incurred in the 1995 Mortgage Foreclosure Case and the bankruptcy case in excess of the fees approved by the Bankruptcy Court for those matters, and included fees for extraneous matters such as complaints filed by Redmond against Pinnacle and/or its attorneys with the Office of Banks and Real Estate and the Attorney Registration and Disciplinary Commission.   Moreover, Pinnacle was now admitting that it sought to recover in its payoff letters and in the Pending Mortgage Foreclosure Action amounts for court costs, "miscellaneous expenses" and attorneys' fees that, while approved by the Bankruptcy Court, were supposed to have been paid by Redmond's Chapter 13 Plan and not by Redmond directly. (*Id.*, pp. 11-12, ¶¶ 29-31, and Exhibits 14 and 15.)

Armed with what Redmond now believed was proof that Pinnacle had violated the June 18, 1996 Agreed Order, the Chapter 13 Plan the automatic stay and the discharge injunction, Redmond filed his Motion to Reopen which was presented to, and denied by, the Bankruptcy Court on June 29, 2006; and was denied again, after remand by this Court, on December 20, 2007.

## ARGUMENT

By now the Court is well aware of the underlying issues involved in this case. Redmond brought his Motion to Reopen pursuant to Section 350(b) of the Code, which provides, "[a] case may be reopened in the court in which such case was closed to administer assets, to accord other relief to the debtor, or for other cause." 11 U.S.C. § 350(b). Further, Fed. R. Bankr. P. 9024 provides that a motion to reopen a bankruptcy case is not subject to the one-year limitation imposed by Rule 60(b) of the Federal Rules of Civil Procedure, Fed. R. Civ. P. 60(b). As with Redmond's initial appeal of the Bankruptcy Court's June 29, 2006 Order, the primary basis for this appeal is that Judge Wedoff, in denying Redmond's Motion to Reopen, once again improperly delved into the merits of the underlying matter – that is, the Motion for Sanctions which Redmond sought leave to file against Pinnacle. Furthermore, in his December 20, 2007 Memorandum Opinion Judge Wedoff compounded that error by disregarding this Court's ruling on Redmond's initial appeal and by considering issues that went far beyond that which this Court directed Judge Wedoff to consider – *i.e.*, whether Redmond had set forth facts that established that Pinnacle had improperly sought to recover pre-petition indebtedness in violation of Redmond's Chapter 13 Plan. Lastly, Judge Wedoff once again erred by deferring to the state court issues that can only be resolved in federal court.

**I.     THE BANKRUPTCY COURT ERRED IN DENYING REDMOND'S MOTION TO REOPEN AND IN DENYING REDMOND LEAVE TO FILE HIS MOTION FOR SANCTIONS AGAINST PINNACLE.**

Although a bankruptcy judge has discretion to grant or deny a motion to reopen under Section 350(b) of the Code, "[t]he Seventh Circuit recognizes a broad policy in favor of reopening [bankruptcy] cases." *Pettibone Corp. v. Hawxhurst*, 163 B.R. 989, 996 (N.D. Ill. 1994). Here, the Bankruptcy Court abused its discretion (a) by disregarding the District Court's

prior ruling and going beyond the matters the District Court directed the Bankruptcy Court to consider; (b) in doing so, denying Redmond an opportunity to be heard on those issues; (c) by ruling on the merits of the Redmond's proposed Motion for Sanctions rather than on the narrow question whether Redmond had presented a basis for reopening the case; (d) by denying Redmond a fair hearing on his Motion for Sanctions; and (e) by denying Redmond due process of law by ruling on the merits of his Motion for Sanctions without affording Redmond a fair hearing.

**A.    The Bankruptcy Court Failed to Follow the District Court's Instructions on Remand.**

Reversing Judge Wedoff's June 29, 2006 Order in Redmond's initial appeal, this Court held:

> [A]s best as this court can tell, the sole inquiry the bankruptcy made [in June 2006] into whether Pinnacle's conduct implicated the [June 18, 1996] Agreed Order or discharge injunction was to ask whether Pinnacle was placing a lien on real, as opposed to personal, property.  The bankruptcy court should have dug deeper.  Even liens on real property can violate the terms of a chapter 13 plan. …
>
> …
>
> It was therefore incumbent on the bankruptcy court to take into account the fact that Pinnacle might be attempting to collect a debt in excess of the amount allowed under Redmond's chapter 13 plan.  If Pinnacle was attempting to collect a *post*-petition debt which arose from Redmond's second default, then the bankruptcy court would have been correct to conclude that Pinnacle's conduct did not implicate the chapter 13 plan because the plan concerned only debt incurred up to the date Redmond filed for bankruptcy.  If, however, Pinnacle was attempting to collect *pre*-petition debt, and attempting to collect more than it was due under the chapter 13 plan, then Pinnacle's conduct may have violated the plan.  There is no indication in the [June 29, 2006] hearing transcript or anywhere else in the record that the bankruptcy court took any of this into account before denying Redmond's motion to reopen.

*In re James A. Redmond*, No. 06 C 4503 (N.D. Ill.), District Court's Memorandum and Order dated July 13, 2007, at pp. 6-7 (Bankruptcy Docket No. 131).

In so ruling, this Court relied on *In re Barton*, 359 B.R. 681 (Bankr. N.D. Ill. 2006), in which the court imposed sanctions upon a county which had sought to impose a lien on the debtor's real estate for unpaid real estate taxes.　In *Barton*, as here, the bankruptcy court had included the county's claim for taxes in the debtor's chapter 13 plan and the debtor made all payments due under the plan.　Thereafter, the county filed a lien against the debtor's real estate for an amount in excess of the debt included in the chapter 13 plan.　The bankruptcy court held that the issue of whether the county's actions violated the debtor's chapter 13 plan turned not on whether the county sought to collect the alleged unpaid real estate taxes through a lien on real property, but whether the amounts the county sought to collect were pre- rather than post-petition debt.　359 B.R. at 686-88.　Because the county sought to recover pre-petition debt through its lien, the bankruptcy court in *Barton* determined that the county had violated the chapter 13 plan and therefore imposed sanctions.　*Id.*

Thus, on the authority of *Barton*, the District remanded this case to Judge Wedoff to determine whether Redmond's pleadings showed that Pinnacle had attempted to recover pre-petition indebtedness above that which had been awarded Pinnacle in Redmond's Chapter 13 Plan.　Following entry of the District Court's July 13, 2007 Memorandum and Order, and the Bankruptcy Court scheduled an initial status hearing in the remanded case for November 8, 2007.　On that date, Redmond's additional counsel was permitted to withdraw from the case and the matter was continued to November 29, 2007 and again to December 20, 2007.　In each instance following the initial status hearing on November 8, 2007, the matter was continued for *ruling* on the pending Motion to Reopen; at no time did the Bankruptcy Court solicit further briefs from the parties, nor did the Bankruptcy Court afford Redmond any opportunity to address

the issue whether his Motion to Reopen and the proposed Motion for Sanctions demonstrated that Pinnacle was attempting to recover pre-petition indebtedness.

Ultimately, the Bankruptcy Court issued its ruling on December 20, 2007, and in so doing went well beyond the simple issue the District Court directed it to consider. Instead, the Bankruptcy Court's sixteen (16) page Memorandum Opinion (Bankruptcy Docket No. 141) included five (5) pages of "Findings of Fact," despite never having held an evidentiary hearing, and reached the following conclusions:

(a)    Redmond's proposed Motion for Sanctions did not have "facial validity," in that Pinnacle's "conduct violated no court order or any right accorded to a debtor in bankruptcy." (Bankruptcy Court's Memorandum Opinion dated December 20, 2007, at p. 8.)

(b)    "[N]othing in the [June 18, 1996] Agreed Order created any obligation on the part of the bank that Redmond could seek to enforce" and "[t]he order itself did not require the bank to do or refrain from doing anything that affected Redmond." (*Id.*, at pp. 8-9.)

(c)    Even if Pinnacle's payoff letters included amounts it was not entitled to recover, and even though they were issued while the automatic stay was in effect, Pinnacle did not thereby violate the automatic stay because it "did not seek payment by issuing the letters." (*Id.*, p. 9.)[1]

(d)    Pinnacle was not required to give Redmond notice of the termination of the automatic stay following the April 1, 1998 due date of the Balloon Payment under the subject Mortgage. (*Id.*, p. 10.)

---

[1] Judge Wedoff noted that this conclusion was contrary to the holding in *In re Sullivan*, 367 B.R. 54 (Bankr. N.D. N.Y. 2007), but found that *Sullivan* was "not persuasive." Bankruptcy Court's Memorandum Opinion dated December 20, 2007, at p. 10.

(e)    Pinnacle did not violate the Chapter 13 Plan by seeking monies in its payoff letters that were to be paid through the Chapter 13 Trustee.  (*Id.*, p. 11.)

(f)    Pinnacle did not violate the discharge injunction through the Pending Mortgage Foreclosure Action because Redmond's failure to make the Balloon Payment when due resulted in a second default, as a consequence of which "he lost any right to a discharge of the bank's claim." (*Id.*, pp. 12-13.)

(g)    Under Section 524(a) of the Code, the discharge did not avoid the Bank's pre-petition lien on Redmond's property.  (*Id.*, p. 13.)

(h)    Redmond could challenge the amount of Pinnacle's claim, and potentially "challeng[e] the bank's good faith in pursuing its claim," in the state court.  (*Id.*)

(i)    Redmond's Motion to Reopen was untimely.  (*Id.*, pp. 15-16.)

None of these conclusions directly addresses the simple matter the District Court directed Judge Wedoff to consider: *i.e.*, whether Redmond's Motion to Reopen asserted that Pinnacle violated Redmond's rights under the Chapter 13 Plan by seeking to recover pre-petition indebtedness to which it was not entitled.  That, of course, is one of the primary issues addressed in the proposed Motion for Sanctions which Redmond sought leave to file upon reopening the case.

For example, in paragraphs 26 and 27 of the proposed Motion for Sanctions, Redmond indicates that Pinnacle had finally, after approximately seven (7) years of litigation in state court, identified how it had calculated the "Other Charges Due" figure contained in the disputed March 19, 1998 Payoff Letter (which charges were also sought in the Pending Mortgage Foreclosure). According to Pinnacle's itemization, the "Other Charges Due" figure included $4,055.00 in attorneys' fees, of which $2,500.00 were awarded Pinnacle in the June 18, 1996 Agreed Order

and the Chapter 13 Plan – $2,000.00 representing fees associated with the 1995 Mortgage Foreclosure Action and an additional $500.00 representing fees and costs associated with Redmond's Chapter 13 Case.  As to the remaining $1,555.00 in attorneys' fees included in the "Other Charges Due" figure, Pinnacle claimed that those fees were post-petition fees to which Pinnacle was entitled over and above the sums awarded it by the Bankruptcy Court.  (Redmond's Proposed Motion for Sanctions, pp. 10-11.)    Judge Wedoff accepted this explanation without comment, and without affording Redmond an opportunity to address the matter.  (*See* Bankruptcy Court's Memorandum Opinion dated December 20, 2007, at p. 6 n. 4.)

But the proposed Motion for Sanctions went on to explain, in painstaking detail, why Pinnacle's explanation of the additional $1,555.00 in attorneys' fees was belied by correspondence between Pinnacle and its counsel, by the attorney time records produced by Pinnacle in order to support its position, and by correspondence between Pinnacle's counsel and Redmond.  Specifically, the attorney time records given to support the additional $1,555.00 include at least $900.00, or roughly 58% of the questioned fees, incurred in handling claims filed by Redmond with the Illinois Office of Banks and Real Estate (the "OBRE"), the Attorney Registration and Disciplinary Commission ("ARDC") and the Federal Deposit Insurance Corporation ("FDIC").    (Redmond's Proposed Motion for Sanctions, p. 12, ¶ 30.)    Yet Pinnacle's counsel had written to Redmond on April 3, 1998, and explicitly stated that he had not charged Pinnacle, nor was Pinnacle seeking to recover from Redmond, *any* fees associated with Redmond's complaints to OBRE, the ARDC and the FDIC.  (*Id.*, ¶¶ 30-31, and Exhibit 15).

Consequently, Pinnacle's own records undermine its explanation for the additional $1,555.00 in attorney's fees sought in the "Other Charges Due" figure.  Since Pinnacle, according to its own counsel, never sought to recover the roughly $900.00 in fees incurred in

connection with the OBRE, ARDC and FDIC complaints, Pinnacle cannot now claim that those fees are part of the "Other Charges Due."    Redmond therefore alleges that the $1,555.00 in additional fees must have included pre-petition fees over and above the amounts awarded to Pinnacle in the Chapter 13 Plan.    Pinnacle apparently denies that is so; but that creates a factual dispute that Redmond is entitled to present to the Bankruptcy Court after having reopened his case.    At a minimum, therefore, the Bankruptcy Court should have given Redmond an opportunity to reopen his case, present his Motion for Sanctions, and submit evidence to support his position.

Nor is the discrepancy between Pinnacle's explanation of the questioned fees, on the one hand, and the facts on which it purportedly relies to support that explanation, on the other, an insignificant matter.    While the specific question relates to $1,555.00 out of the $4,055.00 in "Other Charges Due" itemized in Pinnacle's March 19, 1998 Payoff Letter – and that amount may seem trivial in connection with the overall case – it was Pinnacle's steadfast refusal to provide Redmond an explanation of that figure that, in effect, forced Redmond to default on the April 1, 1998 Balloon Payment under the original Note and Mortgage, which, in turn, led to the Pending Mortgage Foreclosure Action and Redmond's attempt to reopen his case.    Thus, the entire saga began with Pinnacle's efforts to recover pre-petition indebtedness in violation of the Chapter 13 Plan, followed by its refusal to provide information so as to cover up that violation.

In the end, had Judge Wedoff done what this Court directed – that is, had he considered the whether Redmond's pleadings contained allegations that Pinnacle had improperly sought to recover pre-petition indebtedness in violation of the Chapter 13 Plan – he would have been constrained to reopen Redmond's Chapter 13 case to permit Redmond to go forward with the

Motion for Sanctions. Having failed to do what this Court ordered, Judge Wedoff committed reversible error.

**B.    The Bankruptcy Court Denied Redmond the Opportunity to be Heard on the Very Issues Addressed in Its December 20, 2007 Memorandum Opinion.**

As indicated above, upon remand to the Bankruptcy Court, Judge Wedoff advised the parties that he would issue a ruling in accordance with this Court's July 13, 2007 Memorandum and Order. At no time did the Bankruptcy Court solicit additional briefs or pleadings from the parties, nor did the Bankruptcy Court entertain additional arguments of counsel or allow evidence to be introduced in support of, or against, Redmond's Motion to Reopen.

The Bankruptcy Court, however, went far beyond the issues identified in this Court's July 13, 2007 Memorandum and Order; and even if it were proper for the Bankruptcy Court to have done so, the Bankruptcy Court made numerous findings of fact and conclusions of law which Redmond, by rights, should have been allowed address before the Bankruptcy Court rendered its decision. For example, the Bankruptcy Court erroneously found that the attorneys' fees included in the "Other Charges Due" item in Pinnacle's March 19, 1998 Payoff Letter (Motion for Sanctions, Exhibit 9) represented "substantial additional work that would ordinarily be required to represent a mortgagee bank in a Chapter 13 case … ." (Bankruptcy Court's December 20, 2007 Memorandum Opinion, p. 6 n. 4.) Specifically, the Bankruptcy Court found that those fees related to the complaints filed by Redmond against Pinnacle and its counsel with OBRE, the ARDC and the FDIC. (*Id.*)

In other words, in its "Findings of Fact" the Bankruptcy Court simply accepted Pinnacle's explanation of the disputed fees, even though Redmond's proposed Motion for Sanctions asserts that that explanation is inaccurate and that Pinnacle was, in fact, seeking to recover pre-petition attorneys' fees to which it was not entitled under the Chapter 13 Plan. If

Redmond is correct, then, under the authority of *In re Barton*, 359 B.R. 681 (Bankr. N.D. Ill. 2006), he has established a basis for the imposition of sanctions (and, therefore, a basis to reopen the case). Thus, the pleadings created a factual dispute which should have been resolved after the Chapter 13 Case was reopened and Redmond was granted leave to file his Motion for Sanctions. By resolving this factual issue in Pinnacle's favor and by refusing to permit Redmond an opportunity to explain *why* he challenged Pinnacle's explanation of the disputed attorneys' fees, the Bankruptcy Court denied Redmond a fair hearing.

Similarly, the Bankruptcy Court asserted that even if the amounts sought in Pinnacle's disputed payoff letters were improper, Pinnacle did not thereby violate the automatic stay because it "did not seek payment by issuing the letters." (Bankruptcy Court's Memorandum Opinion dated December 20, 2007, p. 9.) The Bankruptcy Court noted that this conclusion was contrary to the holding of *In re Sullivan*, 367 B.R. 54 (Bankr. N.D. N.Y. 2007), but simply dismissed *Sullivan* as "not persuasive." (*Id.*, at p. 10.) That issue, however, goes to the very heart of Redmond's case. Given that the Bankruptcy Court acknowledged the existence of authority to support Redmond's position, the Bankruptcy Court should, at a minimum, have allowed Redmond to address the matter.

Another critical issue Redmond should have been permitted to address involves the Bankruptcy Court's conclusion that Pinnacle did not violate the discharge injunction through the Pending Mortgage Foreclosure Action because Redmond's failure to make the Balloon Payment when due resulted in a second default, as a consequence of which "he lost any right to a discharge of the bank's claim." (Bankruptcy Court's Memorandum Opinion dated December 20, 2007, pp. 12-13.) Once again, the problem arises not from the fact that Redmond defaulted but from Pinnacle's conduct which, in effect, forced Redmond to default. Redmond asserts that

Pinnacle's attempts to recover the mysterious "Other Charges Due" violated his rights under both the Chapter 13 Plan and the automatic stay, because those charges included pre-petition indebtedness to which Pinnacle was not entitled. Had Pinnacle *not* sought to recover improper fees – that is, had Pinnacle *not* violated the Chapter 13 Plan and the automatic stay – Redmond would have refinanced his Mortgage, made the Balloon Payment on time, and would never have been in default in the first instance. But the Bankruptcy Court prevented Redmond from explaining these circumstances by summarily denying Redmond's Motion to Reopen without permitting Redmond an opportunity to address the matter in detail.

Finally, the Bankruptcy Court's Memorandum Opinion asserts that Redmond's Motion to Reopen was "untimely," citing the "delay" between the time when Redmond "first learned of the bank's position about the balance due on his mortgage through payoff letter[s] he received in March 1999" (Bankruptcy Court's Memorandum Opinion dated December 20, 2007, p. 15), and June 2006, when Redmond brought the Motion to Reopen. Note that no one – not Pinnacle, not the Bankruptcy Court in its June 2006 ruling, and not the District Court in Redmond's prior appeal – had raised the timeliness issue, and, therefore, Redmond never had the opportunity to explain *why* he did not file the Motion to Reopen until June 2006. Had Redmond been afforded that opportunity, he would have advised the Bankruptcy Court that he did not, in fact "first learn of the bank's position" with regard to the disputed "Other Charges Due" in March 1998. In fact, as set out in the Motion to Reopen and the Motion for Sanctions, Redmond sought repeatedly to obtain that information, and Pinnacle steadfastly refused to provide it. In fact, it took *seven (7) years of litigation* before Pinnacle attempted to explain the calculation of the "Other Charges Due" in the March 19, 1998 Payoff Letter (Motion to Reopen, pp. 3-4, ¶¶ 6-7; Motion for

Sanctions, pp. 9-10, ¶¶ 25-26, and Exhibit 11.) – and even then, Pinnacle's explanation was contradicted by the very documents it produced to support that position.

Redmond was denied the opportunity to address any of the foregoing matters following the District Court's remand after Redmond's initial appeal.  Instead, the Bankruptcy Court issued its Memorandum Opinion without affording Redmond a fair hearing on these matters; and that, too, amounted to reversible error.

**C.    The Bankruptcy Court Abused Its Discretion by Ruling on the Underlying Motion for Sanctions.**

Consistent with the Seventh Circuit's policy in favor of granting motions to reopen bankruptcy cases, the bankruptcy court, when presented with a motion to reopen, is presented with the narrow issue of whether grounds to reopen the case exist; it is an abuse of discretion for the bankruptcy court to reach the underlying issue which the debtor seeks to address upon reopening his or her case.   In *In re Lopez*, 283 B.R. 22, 26-27 (9th Cir. BAP 2002), the court explained:

> … reopening a bankruptcy case is typically ministerial and "presents only a narrow range of issues: whether further administration appears to be warranted; whether a trustee should be appointed; and whether the circumstances of reopening necessitate payment of another filing fee." *Menk v. LaPaglia (In re Menk)*, 241 B.R. 986, 916-17 (9th Cir. BAP 1999). …
>
> Therefore, although a motion to reopen is addressed to the sound discretion of the bankruptcy court, "the court has the duty to reopen an estate whenever prima facie proof is made that it has not been fully administered." [*In re*] *Herzig*, 96 B.R. [264,] at 266 [9th Cir. BAP 1989)].

The *Lopez* court went on to state, "***the decision whether to reopen should not become a battleground for litigation of the underlying merits.***"  283 B.R. at 28 (emphasis supplied).  *See also In re Abbott*, 183 B.R. 198, 200 (9th Cir. BAP 1995) ("[a] motion to reopen is simply a mechanical device … [i]t has no independent legal significance ***and determines nothing with***

*respect to the merits of the case*") (emphasis supplied); *In re Venuto*, 343 B.R. 120, 124-25 (Bankr. E.D. Pa. 2006) (decision to open case is distinct from merits of issue debtor wants to raise once case is reopened).

Here, Redmond sought to reopen his Chapter 13 case for the purpose of filing a Motion for Sanctions against Pinnacle. Accordingly, the issue before the Bankruptcy Court was not whether it should grant or deny the Motion for Sanctions, but whether Redmond was entitled to reopen his case for purposes of filing that Motion. *See Venuto*, *supra*, 343 B.R. at 125 ("it would seem appropriate … to reopen a case to consider affording relief to a debtor who asserts a right provided under Title II, particularly if that right is grounded in a prior order of the court.") Indeed, Judge Wedoff acknowledged as much when he indicated that if Redmond's proposed Motion for Sanctions had "facial validity," a basis to reopen the case would exist. (Bankruptcy Court's Memorandum Opinion dated December 20, 2007, p. 8.)

But as the foregoing discussion indicates, Judge Wedoff went far beyond merely inquiring as to whether there was a basis to reopen Redmond's bankruptcy case. Instead, he focused not on whether the proffered reason – to file and prosecute a Motion for Sanctions against Pinnacle – was sufficient, but on the merits of the proposed Motion for Sanctions itself. In so doing, he analyzed every detail of Redmond's proposed Motion for Sanctions and (errantly, as explained above) systematically ruled on each claim Redmond sought to advance in his Motion for Sanctions. Consequently, the Bankruptcy Court abused its discretion in denying Redmond's Motion to Reopen, and its order of December 20, 2007 should be reversed.

### D. The Bankruptcy Court Abused Its Discretion by Denying Redmond a Full and Fair Hearing on the Motion for Sanctions.

Not only did Judge Wedoff deny Redmond a fair hearing on his Motion to Reopen, as explained in above, Judge Wedoff deprived Redmond the opportunity to present and obtain a full

and fair hearing on the proposed Motion for Sanctions. Had the Bankruptcy Court found a basis to reopen the case, as it should have found, Redmond would then have been granted leave to file the Motion for Sanctions and to proceed to a full hearing on the merits of that Motion, which, in turn, would have required further briefing and argument before the Bankruptcy Court, and likely would have required additional discovery and an evidentiary hearing as well. But by addressing the merits of Redmond's proposed Motion for Sanctions in the course of denying Redmond's Motion to Reopen, the Bankruptcy Court effectively denied Redmond a full and fair hearing on the proposed Motion for Sanctions.

Because a hearing on a motion to reopen "should not become a battleground for litigation of the underlying merits," *In re Lopez*, 283 B.R. 22, 26-27 (9th Cir. BAP 2002), Redmond should have been permitted to file his Motion for Sanctions; the parties should have had an opportunity to brief it; and the Bankruptcy Court should have conducted a separate hearing on the merits of the sanctions issue. For example, in *In re Venuto*, 343 B.R. 120 (Bankr. E.D. Pa. 2006), the court first determined that reopening debtors' case was appropriate and then went on to consider the merits of the underlying issue – whether a mortgagee had violated debtors' rights under a confirmed Chapter 13 plan – only after the parties had a full opportunity to brief the issue, including submitting a detailed stipulation of facts to be considered by the bankruptcy court in ruling on the underlying issue.[2]

Similarly, in *In re Abbott*, 183 B.R. 198 (9th Cir. BAP 1995), the court affirmed a bankruptcy court's refusal to set aside an order reopening a bankruptcy case where the trustee

---

[2] While the court in *Venuto* considered <u>both</u> the motion to reopen <u>and</u> the merits of the underlying issue in a single proceeding, that is only because the parties *agreed* to consolidate the hearing on debtors' Motion to Reopen and debtors' Motion to Enforce Confirmation and Discharge Orders. 343 B.R. at 125 n. 8. Significantly, however, the court considered both issues separately and reached the merits of the underlying issue on a fully developed record.

sought and was granted leave of court to file an adversary proceeding against the debtor's spouse alleging a fraudulent transfer. After the case was reopened and the trustee filed the adversary complaint, the debtor's spouse challenged the order reopening the case on the grounds that the statute of limitations had run on the proposed fraudulent transfer claim. On appeal, the bankruptcy appellate panel held that the spouse lacked standing to challenge the order reopening the case, stating that "the appropriate time for the [bankruptcy] court to rule on the [statute of limitations] defense is during the course of the anticipated adversary proceeding." 183 B.R. at 201.

The same result should obtain here. Redmond's proposed Motion for Sanctions raised serious questions as to whether Pinnacle violated his rights under the Code. Rather than summarily ruling in Pinnacle's favor on the sanctions issue by denying Redmond the right to reopen his case, the Bankruptcy Court should have permitted Redmond to file the Motion for Sanctions and afforded him a full and fair opportunity to present his case. The Court should therefore reverse the Bankruptcy Court's December 20, 2007 Order.

### E.    The Bankruptcy Court Deprived Redmond of Due Process of Law by Denying Redmond a Full and Fair Hearing on the Motion for Sanctions.

Additionally, by summarily denying Redmond the right to file and prosecute his Motion for Sanctions, the Bankruptcy Court effectively rendered him without a remedy for the serious violations of his rights alleged in the Motion for Sanctions. Because Redmond cannot seek relief in the Circuit Court of Cook County for Pinnacle's violations of his rights (*Halas v. Platek*, 239 B.R. 784, 792 (N.D. Ill. 1999); *see infra*), and the Bankruptcy Court refused to permit Redmond to file his Motion for Sanctions in the first instance, he has effectively been denied *any* forum in which to seek redress for Pinnacle's wrongful conduct.

Accordingly, Redmond has been denied due process of law in violation of the Fifth Amendment to the United States Constitution, and, on that basis, the Court should reverse the Bankruptcy Court's Order of December 20, 2007.

## II.   THE BANKRUPTCY COURT ERRED IN DETERMINING THAT THE CIRCUIT COURT OF COOK COUNTY HAS JURISDICTION TO HEAR ANY REMAINING ISSUES ARISING OUT OF REDMOND'S BANKRUPTCY.

Finally, the Bankruptcy Court ruled that in the event Redmond is entitled to any relief as a consequence of Pinnacle's actions, he could seek such relief from the Circuit Court of Cook County in the Pending Mortgage Foreclosure Action.   (Bankruptcy Court's Memorandum Opinion dated December 20, 2007, p. 13.)  In so ruling, the Bankruptcy Court misapprehended the nature of  the claims Redmond sought to raise in his proposed Motion for Sanctions. Specifically, Redmond sought to reopen his Chapter 13 case to pursue sanctions against Pinnacle under Section 362(h) of the Code, which provides that "[a]n individual injured by any willful violation of the stay provided in this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."  11 U.S.C. § 362(h).

In *Halas v. Platek*, 239 B.R. 784, 792 (N.D. Ill. 1999), the court held "that a § 362(h) request for sanctions is within ***the exclusive jurisdiction of the bankruptcy court*** under [28 U.S.C.] § 1334(a)."  (Emphasis supplied.)  So, again, the Bankruptcy Court erred by determining that Redmond could obtain appropriate relief in state court.  If, in fact, Redmond is able to establish that Pinnacle violated his rights under the Code, Redmond *cannot* obtain relief in the Pending Mortgage Foreclosure Action because the state court simply lacks jurisdiction to award relief under Section 362(h).  Rather, his only remedy is to reopen his Chapter 13 case and pursue sanctions here.

Accordingly, the Bankruptcy Court's December 20, 2007 Order should be reversed and Redmond should be permitted to present his Motion for Sanctions to the Bankruptcy Court.

## CONCLUSION

For the foregoing reasons, Debtor-Appellant, JAMES A. REDMOND, respectfully prays that the Court reverse the Order entered by the Bankruptcy Court on December 20, 2007; remand this cause to the Bankruptcy Court with directions to reopen Redmond's Chapter 13 Case and to grant Redmond leave to file and proceed on his Motion for Sanctions against Pinnacle; and grant such further relief as the Court deems just and proper.

JAMES A. REDMOND


By: /s/ David P. von Ebers
His Attorney

David P. von Ebers  (A.R.D.C. No. 6196337)
Help-U-Settle Attorneys, Chtd.
1034 Pleasant Street
Oak Park, Illinois  60302
(708) 386-4900

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I caused the foregoing Brief of Debtor-Appellant James A. Redmond to be filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  Additionally, the individuals identified on the attached service list will be served by mail, by placing true and correct copies of this Brief of Debtor-Appellant James A. Redmond in envelopes addressed as indicated on the attached service list, with postage prepaid, and depositing the same in the U.S. mail at the Oak Park Main Post Office before the hour of 5:00 p.m. on April 19, 2008.

  /s/ David P. von Ebers

***In Re: James A. Redmond, Debtor***
***James A. Redmond, Appellant v. Fifth Third Bank, f/k/a Pinnacle Bank, Appellee***
**Case No. 06 C 4503**

## SERVICE LIST

James A. Redmond
Mr. James Redmond
125 Acacia Drive
Indian Head Park, Illinois  60525
***Debtor/Appellant***

Roberto Anguizola, Esq.
Schwartz Cooper, Chartered
180 North LaSalle Street
Suite 2700
Chicago, Illinois  60601
***Attorneys for Metropolitan Mortgage and Security Company, Inc.***

Michael C. Kim, Esq.
Michael C. Kim & Associates
19 South LaSalle Street
Suite 303
Chicago, Illinois  60603
***Attorneys for Wilshire Green Condominium Association***

Paul R. Gamperl, Esq.
Tribler, Orpett & Meyer P.C.
225 West Washington Street
Suite 1300
Chicago, Illinois 60606-3408
***Attorneys for Robert A. Egan***