IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| JAMES A. REDMOND, | ) | |
| | ) | |
| Debtor. | ) | Case No. 08 C 961 |
| _____ | ) | |
| | ) | The Honorable Blanche M. Manning |
| JAMES A. REDMOND, | ) | |
| | ) | Appeal from the U.S. Bankruptcy |
| Appellant, | ) | Court for the Northern District of |
| | ) | Illinois |
| v. | ) | Case No. 96 B 3162 |
| | ) | Hon. Eugene Wedoff |
| FIFTH THIRD BANK; f/k/a Pinnacle Bank, | ) | Judge Presiding |
| | ) | |
| Appellee, | ) | |

BRIEF OF APPELLEE FIFTH THIRD BANK

Edward J. Lesniak
Attorney for Appellee
Burke, Warren, MacKay & Serritella, P.C.
330 N. Wabash Avenue
22nd Floor
Chicago, IL 60611-3607
(312) 840-7000

## TABLE OF CONTENTS

POINTS AND AUTHORITIES ................................................................................. i

STATEMENT OF BASIS OF APPELLATE JURISDICTION ....................................... iii

STATEMENT OF ISSUES PRESENTED AND APPLICABLE STANDARD
OF APPELLATE REVIEW ...................................................................................... iv

STATEMENT OF THE CASE ................................................................................... 1

THE CORE DISPUTE BETWEEN THE PARTIES ....................................................... 4

ARGUMENT ......................................................................................................... 5

CONCLUSION ...................................................................................................... 13

## POINTS AND AUTHORITIES

STATEMENT OF BASIS OF APPELLATE JURISDICTION ................................................ iii

    I.     Rule 8002 of the Federal Rules of Bankruptcy Procedure

    II.    28 U.S.C. § 158

STATEMENT OF ISSUES PRESENTED AND APPLICABLE STANDARD
OF APPELLATE REVIEW ....................................................................................... iv

    I.     The Court is constrained to accept the bankruptcy court's findings of fact unless they are clearly erroneous.

         In re Excalibur Auto Corp., 859 F.2d 454, 457 n.3 (7th Cir. 1988)

    II.    The standard of review on appeal is whether the bankruptcy court abused its discretion in denying Appellant's motion to reopen his bankruptcy case.

         Matter of Wade, 991 F.2d 402, 409 (7th Cir. 1992)

         In re Shondel, 950 F.2d 1301, 1304 (7th Cir. 1991)

    III.   This Court may affirm on any basis supported by the record.

         In re Scarlata (Goldberg Securities, Inc. v. Scarlata), 979 F.2d 521, 526 and n.5 (7th Cir. 1993)

         In re Memorial Estates, Inc., 950 F.2d 1364, 1370 (7th Cir. 1991), cert. denied, 504 U.S. 986 (1992)

         In re Rasmussen, 299 B.R. 902, --- (W.D. Wisc. 2003)

         Knepper v. Skekloff, 154 B.R. 75, 81 (N.D. Ind. 1993)

ARGUMENT.................................................................................................................4

    I.     The Bankruptcy Code provides that, "[a] case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause."

         11 U.S.C. § 350 ...................................................................4

    II.    In exercising its discretion to reopen a case, the bankruptcy court should exercise its equitable powers with respect to substance and not technical considerations that will prevent substantial justice.

In re Shondel, 950 F.2d 1301, 1304 (7th Cir. 1991)............................................5

III. A bankruptcy proceeding may not be reopened without cause
IV.

     In re Zurn, 290 F.3d 861, 864 (7th Cir. 2002)......................................6-7

     Pettibone Corp. v. Havorhurst, 163 B.R. 989, 996 (N.D. Ill 1994)....................7

V. The mere assessment of charges to an account or notification of the obligation to pay attorneys' fees, without an overt action to collect, does not violate the automatic stay.

     Mann v. Chase Manhattan Mortgage Corp., 316 F.3d 1, 3-4 (1st Cir. 2003) .... 10

     Guetling v. Household Financial Services, 312 B.R. 699, 703 (M.D. Fl. 2004) 10

     In re Smith, 299 B.R. 687, 692 (Bankr. S.D. Ga. 2003).....................................10

VI. A bankruptcy court should not reopen a case where it would be futile and a waste of judicial resources.

     In re Carberry, 186 BR 401,402 (Bankr. E.D. Va. 1995)...................................12

VII. A state court is capable of resolving a dispute over the amount of attorneys' fees.

     In re Elias, 188 F.3d 1162 (9th Cir. 1999).....................................................12-13

VIII. The amount necessary to cure a default or the amount of fees and costs is decided by applicable nonbankruptcy law.

     11 USC § 1322(e) .............................................................................................13

     11 USC § 506(b).................................................................................................13

IX. No debtor has eternal access to the bankruptcy court to settle disputes in some way related to a debt handled in the bankruptcy.

     In re Zurn, 290 F.3d 861, 864 (7th Cir. 2002)...................................................13

## STATEMENT OF BASIS OF APPELLATE JURISDICTION

In addition to Rule 8002 of the Federal Rules of Bankruptcy Procedure, cited by Appellant, this Court's jurisdiction derives from 28 U.S.C. § 158.

## STATEMENT OF ISSUES PRESENTED
## AND APPLICABLE STANDARD OF APPELLATE REVIEW

There is only one issue in this case: Did the Bankruptcy Court abuse its discretion in refusing to reopen Appellant's Chapter 13 bankruptcy proceeding? More specifically, did the Bankruptcy Court consider the relevant factors that this Court previously directed the Bankruptcy Court to consider in the exercise of its discretion?

In reviewing the issue on appeal, the Court "is constrained to accept the bankruptcy court's findings of fact unless they are clearly erroneous." In re Excalibur Auto Corp., 859 F.2d 454, 457 n.3 (7th Cir. 1988). The standard of review on appeal is whether the bankruptcy court abused its discretion in denying Appellant's motion to reopen his bankruptcy case. Matter of Wade, 991 F.2d 402, 409 (7th Cir. 1992) (citing In re Shondel, 950 F.2d 1301, 1304 (7th Cir. 1991)). In addition, this Court "may affirm on any basis supported by the record." In re Scarlata (Goldberg Securities, Inc. v. Scarlata), 979 F.2d 521, 526 and n.5 (7th Cir. 1993) (citing In re Memorial Estates, Inc., 950 F.2d 1364, 1370 (7th Cir. 1991), cert. denied, 504 U.S. 986 (1992)); see also In re Rasmussen, 299 B.R. 902, -- (W.D. Wisc. 2003); Knepper v. Skekloff, 154 B.R. 75, 81 (N.D. Ind. 1993).

STATEMENT OF THE CASE

This case is an appeal from the United States Bankruptcy Court's denial of Appellant James Redmond's ("Redmond") Motion to Reopen Case ("Motion to Reopen") and for Leave to File Motion for Sanctions ("Motion for Sanctions"), wherein he sought to reopen his long-closed Chapter 13 bankruptcy proceeding in order to assert a claim that Appellee, Fifth Third Bank ("Bank") had violated the automatic stay, the discharge injunction, an Order entered June 18, 1996, and the Chapter 13 plan.

Procedural Background

Redmond filed his Chapter 13 case on February 7, 1996 ("Bankruptcy Case"). (Docket No. 114, Mtn. to Reopen, Exh. A, Exh. 3) At the time, the Bank held a mortgage lien on Redmond's residence, so it filed a secured claim for arrearages in the sum of $13,317.25. (Docket No, 114, Mtn. to Reopen, Exh. A, Exh. 1) On June 18, 1996, the Bankruptcy Court entered an Agreed Order ("Agreed Order") whereby the Bank agreed to reduce its arrearage claim to $10,810.73 "for purposes of the Chapter 13 reorganization plan."[1] (Docket No. 114, Mtn. to Reopen, Exh. A, Exh. 2, par. 2) In addition, the Agreed Order provided that the stay would automatically modify, without any further action by the Bank, on April 1, 1998, the maturity date on Redmond's balloon note with the Bank. (Docket No. 114, Mtn. to Reopen, Exh. A, Exh. 2, par. 7) The Bank only received $7,659.24 of the $10,810.73 it was supposed to receive through the plan before the loan matured on April 1, 1988 and the stay was automatically lifted. (Docket No. 114, Mtn. to Reopen, Exh. A, Exh. 5)

On March 19, 1998, as the loan maturity date approached, at Redmond's request, the Bank provided Redmond a payoff letter that Redmond continues to dispute to this day. (Docket

---

[1]    The Agreed Order, on its face, is stamped "Received" on June 25, 1996. However, the Docket shows it was entered on June 18, 1996. (Red. Brief, Mtn to Reopen, Exh. A, Exh. 2) Therefore the parties typically refer to the date of the Agreed Order as June 18, 1996.

No. 114, Mtn. to Reopen, Exh. D, Exh. 9)  Redmond did not pay off the balloon note on April 1, 1998 and thereafter the Bank brought an action to foreclose its mortgage in the Circuit Court of Cook County ("foreclosure action") that is still pending today.   (Docket No. 114,See Case Caption at Mtn. to Reopen, Exh. A, Exh. 11)  Redmond received his discharge on May 4, 2001.  (Docket No. 103)  Redmond's Bankruptcy Case was closed on May 24, 2001.  (Docket No. 114, Mtn. to Reopen, Exh. A, Exh. 3, p. 10)

Seven years of litigation of the foreclosure action ensued until, in June, 2005, Redmond filed his first motion to reopen the Bankruptcy Case.  (Docket No. 111, Mtn. to Reopen, Exh. A, Exh. 3, p. 10,)  On July 12, 2005, the Bankruptcy Court declined to do so because the parties' dispute involved only a disagreement as to the amount of the Bank's mortgage lien.  (Transcript of 7/12/05 Hearing)  The effect, if any, of the Agreed Order on determining that amount owed could be adequately determined in the foreclosure action.  Id.  Redmond did not appeal the Bankruptcy Court's denial of his motion to reopen on July 12, 2005.

Almost a year later, on June 29, 2006, Redmond presented his second Motion to Reopen. (2006 Transcript)  At the hearing, the Bankruptcy Court repeatedly asked Redmond's counsel to identify conduct by the Bank that would constitute a violation of either the automatic stay or the discharge injunction as a justification to reopen the Bankruptcy Case.  Id.  Redmond's attorneys repeatedly pointed only to their belief that in the foreclosure action the Bank was claiming an amount that was not included in the Agreed Order.  Id.  The Bankruptcy Court, in turn, repeatedly pointed out that the Bank's assertion of an amount owed with respect to its mortgage lien on Redmond's property would not constitute a violation of the automatic stay or the discharge injunction's prohibition against attempting to collect a discharged debt from Redmond as a personal obligation.  Id.  Because Redmond could not identify any conduct by the Bank

2

directed to him personally that, if proven, would constitute a violation of the automatic stay or the discharge injunction, the Bankruptcy Court declined to reopen the case. Id. Redmond then appealed the Bankruptcy Court's denial of his Motion to Reopen to this Court.

On July 13, 2007, this Court entered its Memorandum and Order ("District Court Opinion") wherein this Court determined that the Bankruptcy Court had not considered certain relevant factors in making its decision, and so it remanded the case to the Bankruptcy Court. (Docket No. 131) Specifically, this Court felt that the Bankruptcy Court should have considered whether the Bank had attempted to collect post-petition debt or pre-petition debt, or more than it was due under the Chapter 13 plan. (Docket No. 131, Dist. Ct. Op., pp. 7-8)

On December 24, 2007, the Bankruptcy Court, on remand, entered its Order and Memorandum Opinion ("Bankruptcy Court Opinion") wherein it again denied Redmond's Motion to Reopen and, in doing so, carefully considered and explained, in detail, its consideration of all relevant factors, specifically including whether the Bank had attempted to collect post-petition or pre-petition debt, or more than was due under the Chapter 13 plan. (Docket Nos. 141-142, Bankr. Ct. Op., Order)

<u>THE CORE DISPUTE BETWEEN THE PARTIES</u>

The Bankruptcy Court has fairly stated the facts and the nature of the core dispute between Redmond and the Bank.  (Bankr. Ct. Op., Docket No. 141, pp. 3-6)  To avoid unnecessary repetition, the Bank herein adopts the recitation of the facts set forth by the Bankruptcy Court, for purposes of this brief.[2]  However, there are a few additional facts that should be brought to this Court's attention.

First, it is not clear that Redmond timely made payments to both the Bank and the Chapter 13 trustee, as presumed by the Bankruptcy Court.  (Docket No. 141, Bankr. Ct. Op., p. 4)  In fact, after the Agreed Order was entered, the Bank filed a motion to lift the automatic stay and a motion for adequate protection payments on October 31, 1996, supplemented by a statement of default.  (Docket Nos. 60-62)  The motion for adequate protection payments was granted.  (Docket No. 70)  Moreover, the record discloses that the Bank's counsel prepared a letter on December 6, 1996 regarding Redmond's failure to make the November, 1996 payment. (Docket No. 114, Mtn. for Sanctions, Exh. 13, p. 53RED0080)

Second, in supplement to footnote 4 at page 6 of the Bankruptcy Court Opinion, the Bank also refers this Court to the specific time entries of the Bank's counsel that are contained in Exh.13 of the Motion for Sanctions.  (Docket No. 114, Mtn. for Sanctions, Exh. 13, p. 53RED0079-83)  They identify that attorneys' fees included in the Bank's payoff letter are for substantial services rendered <u>post</u>-petition, after the Agreed Order, and directly related to Redmond's bankruptcy, all of which are recoverable under the terms of the mortgage.  (Docket No. 114, Mtn. for Sanctions, Exh. 13, p. 53RED0079-83)  They include such pertinent items as a

---

[2]    The Bank has not had occasion to file a response to the Motion to Reopen or the Motion for Sanctions, so it has never had a chance to state its version of the facts.  The Bank disputes many of the facts alleged by Redmond. However, as with a motion to dismiss for failure to state a cause of action, Redmond's factual allegations are generally taken by the Bank as true solely for purposes of the Motion to Reopen.

review of Redmond's amended bankruptcy plan (11/16/96), preparation of an order pursuant to the motion for adequate protection payment (12/04/96) checking on the confirmation of Redmond's plan (5/2/97, 5/26/97) and responding to Redmond's repeated attempts to directly communicate with the Bank (8/26/07, 9/26/07).

Third, the Chapter 13 Trustee never paid the Bank all of the $10,810.73 included in the Agreed Order for purposes of the Chapter 13 reorganization plan. The Bank only received $7,659.24 from the Chapter 13 Trustee. (Docket No. 114, Mtn. for Sanctions, Exh. 5) This is an important fact, as the Bank believes this Court may previously have been under the misconception that the Bank had conceivably included in its payoff letter sums that it had already received from the Chapter 13 Trustee. (Docket No. 131, Dist. Ct. Op., p. 3) Redmond agrees that the Bank was still entitled to $3,151.49 under the Chapter 13 Plan at the time the Bank furnished its payoff letter. (Red. Brief, pp. 7-8)[3]

Fourth, the Bank notes that in his statement of facts, Redmond jumps from July 1, 1998 to July 12, 2005 without any explanation whatsoever as to what facts, if any, would have prevented Redmond from asking for relief from the Bankruptcy Court from July 1, 1998 to July 12, 2005. (Red. Brief, p. 9) In fact, during that time period the parties were engaged in litigation of the still-pending foreclosure action.

ARGUMENT

Prefatory Statement

The sole issue before this Court is whether the Bankruptcy Court abused its discretion under applicable standards in denying the Motion to Reopen, and, more specifically, whether the Bankruptcy Court considered the factors stated by this Court to be pertinent to that consideration.

---

[3]      Additionally, Redmond asserts that in its payoff letter the Bank sought fees that were "supposed to have been paid by Redmond's Chapter 13 Plan. . ." thereby belying any argument that, in its payoff letter, the Bank sought to recover amounts that had, in fact, already been paid by the Chapter 13 trustee. (Redmond Brief, p. 11)

In addressing this issue, Redmond's Brief is a model of self-contradiction. Redmond repeatedly argues that the Bankruptcy Court did not do enough to provide him with an opportunity to be heard, while at the same time sharply criticizing the Bankruptcy Court for going "far beyond" its duty by "analyzing every detail of Redmond's proposed Motion for Sanctions." (Red. Brief, pp. 19, 23) Did the Bankruptcy Court do too little or too much? Redmond's answer is both.

On the contrary, the Bankruptcy Court did exactly what this Court asked it to do. It thoroughly considered all of Redmond's four claims (violation of a court order, violation of the stay, violation of the discharge injunction, and violation of the Chapter 13 plan) and all of the relevant factors. It also addressed the specific matters referred to by this Court in the District Court Opinion. Accordingly, the Bankruptcy Court did not abuse its discretion in denying Redmond's Motion to Reopen, and its ruling should be upheld.

The Applicable Standard.

Section 350(b) of the Bankruptcy Code provides that, "[a] case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350. The Seventh Circuit Court of Appeals has held that "[i]n exercising its discretion to reopen a case, the bankruptcy court should exercise its equitable powers with respect to substance and not technical considerations that will prevent substantial justice." In re Shondel, 950 F.2d 1301, 1304 (7th Cir. 1991) (internal citations and quotations omitted). Further, the Seventh Circuit has held that the bankruptcy court has "broad discretion" in determining whether a bankruptcy case should be reopened. Id. However, a bankruptcy proceeding may not be reopened *without cause*. The Seventh Circuit has held that:

> Section 350(b) allows a district judge to reopen a bankruptcy proceeding, but use of that power is reserved for matters such as the correction of errors (see *In re Shondel,* 950 F.2d 1301 (7th Cir.1991)), amendments necessitated by

unanticipated events that frustrate a plan's implementation, and the need to enforce the plan and discharge (see *In re Bianucci,* 4 F.3d 526 (7th Cir.1993)).

In re Zurn, 290 F.3d 861, 864 (7th Cir. 2002).

Redmond overstates the applicable standard when he says "[t]he Seventh Circuit recognizes a broad policy in favor of reopening [bankruptcy] cases." Pettibone Corp. v. Havorhurst, 163 B.R. 989, 996 (N.D. Ill. 1994). (Red. Brief, p. 12) The actual standard recognized by the district court in Pettibone is as follows: "The Seventh Circuit recognizes a broad policy in favor of reopening cases *for cause* that includes reopening a bankruptcy case in order to modify a permanent injunction." Id. (emphasis added) In In re Zurn, the Seventh Circuit further explained that a debtor's "belief that anyone who has been a debtor in bankruptcy has eternal access to federal court for all disputes related in some way to the debts handled in the bankruptcy proceeding is incompatible not only with *Pettibone* but with many other cases. . ." 290 F.3d at 864.

This Court's Directive

Redmond first argues that the Bankruptcy Court failed to consider whether the Bank's claim for pre-petition debt was limited by the Chapter 13 plan, that is, whether the Bank was attempting to collect a debt in excess of what was allowed under the Chapter 13 plan, as in In re Barton, 359 B.R. 681 (Bankr. N.D. Ill. 2006).[4] (Red. Brief, pp. 14-15) In fact, this is one instance in which Redmond argues the Bankruptcy Court did not do enough, and on the very next page argues it considered too much. (Red. Brief, pp. 14-15)

---

[4] In re Barton is distinguishable from the instant case. First, in Barton, the trustee paid the county the full amount of its claim, but the county later sought to collect more. Here, the trustee never paid the Bank the full amount of the arrearage included in the plan, so it is appropriate for the Bank to include unpaid prepetition amounts in its payoff letter. (Bankr. Ct. Op., p. 11) Second, in the instant case, the stay was automatically lifted by the terms of the Agreed Order on April 1, 1998, thereby removing the matter from the purview of the Bankruptcy Court. In Barton, the county never sought modification of the stay. Third, in Barton, the county did not file a claim, so it was bound by the claim filed on its behalf by the debtor. In the instant case, the Bank did file a claim that resulted in an agreement as to the amount of that claim "for the purposes of the Chapter 13 reorganization plan," thus leaving for later determination (at the time of the balloon payment) the exact amount owed.

In reality, the Bankruptcy Court dealt directly with the issue this Court directed it to deal with. Specifically, the Bankruptcy Court considered whether the Bank might have violated the stay by providing payoff letters in response to Redmond's request and concluded it did not. (Bankr. Ct. Op., pp. 9-10) Second, the Bankruptcy Court specifically considered whether the Bank might have violated the Chapter 13 plan by including in its payoff letter amounts that were scheduled to be paid through the plan. (Bankr. Ct. Op., p. 11) Noting that the Bank had not received all of its scheduled payments, the Bankruptcy Court concluded that the payoff letter did nothing more than state the total amount claimed to be owed by the Bank, without regard to how it would be paid, concluding that stating the full balance due "was not only consistent with Redmond's plan, it was essential to allow the refinancing that Redmond was seeking. (Bankr. Ct. Op., p. 11) Thus, the Bankruptcy Court considered precisely the issue that this Court had asked it to consider.

Moreover, the Bankruptcy Court did not abuse its discretion in reaching its conclusion. Its conclusion is directly aligned with this Court's understanding that the Chapter 13 plan covered only pre-petition debt and that the Bankruptcy Court is justified in refusing to reopen the case where the Bank's claim included post-petition debt. (Dist. Ct. Op., p. 7) Redmond himself asserts that the amount claimed by the Bank includes at least $1,555 in attorney's fees incurred after the June 18, 1996 Order. (Red. Brief, p. 11)

Moreover, as the Bankruptcy Court explained in detail, Redmond's assertion that the Bank violated the Chapter 13 Plan by including in its payoff letter amounts that were included in the plan but were unpaid by the Trustee is without basis. (Bankr. Ct. Op., p. 11) When the stay was lifted at the time the balloon payment came due on April 1, 1998, the Bank was entitled to full payment of all amounts owed, whether pre-petition or post-petition, and without regard to

how it would be paid. (Bankr. Ct. Op., p. 11)  The Bank did not then have a separate claim for a post-petition "mortgage" and a separate claim under the plan.  (Bankr. Ct. Op., p.12)  Thus, it was perfectly appropriate for the Bank to include all amounts, both unpaid pre-petition amounts and post-petition amounts owed by Redmond in its payoff letter.  (Bankr. Ct. Op., p. 11)

The Bankruptcy Court Considered All Pertinent Factors

As noted above, after first arguing that the Bankruptcy Court did not consider enough, Redmond switches to arguing that the Bankruptcy Court considered too much, going far beyond the issues identified in the District Court Opinion.  (Red. Brief, p. 19)  Although this Court specifically asked the Bankruptcy Court to consider whether there was a basis to reopen the case based on whether the Bank was seeking pre-petition amounts in excess of the amount provided for in the Chapter 13 plan, it also directed the Bankruptcy Court to "take into account all pertinent factors in determining whether Redmond has presented cause for reopening his bankruptcy case. . . ." (Dist. Ct. Op., p. 8)

The Bankruptcy Court responded to this directive by considering the specific issue this Court asked it to address, as argued above, and by thoroughly considering all other pertinent factors in accordance with applicable law.  Citing, In re Zurn, 290 F.3d 861, 864 (7th Cir. 2002) and In re Antonious, 373 B.R. 400, 405-406 (Bankr. E.D. 2004), the Bankruptcy Court identified that the issues raised by Redmond's motion "coalesced around three. . .factors," namely Redmond's alleged rights arising from the bankruptcy case, the appropriate forum for determining the rights of Redmond and the Bank, and the timeliness of Redmond's request for reopening the case. (Bankr. Ct. Op., p. 8)

The Bankruptcy Court then addressed each one of these factors.  It first addressed, in turn, each of Redmond's four claims, namely that the Bank had:  (1) breached the Agreed Order;

9

(2) violated the automatic stay; (3) violated the Chapter 13 Plan, or (4) violated the discharge injunction. (Bankr. Ct. Op., pp. 8-13)  Certainly, these are appropriate considerations in determining whether cause exists to reopen a closed case, as they were the issues that Redmond himself placed before the Bankruptcy Court.

Redmond's arguments that the Bankruptcy Court should not have considered certain matters appears to be more in the realm of a complaint that he did not have a chance to argue the merits. In so arguing he undermines his own argument that the Bankruptcy Court should not consider the merits in determining whether to reopen the case. The Bankruptcy Court's charge is to determine whether there is cause to reopen the case based on the facts asserted by Redmond. Its charge is not, as Redmond himself argues, to decide the case on the merits.

For example, Redmond argues the Bankruptcy Court should have allowed him to address whether a payoff letter that was given to Redmond in response to his request violates the automatic stay because it may include an item that was not covered by the Agreed Order or because the payoff letter itself sought payment in violation of the stay. (Red. Brief, pp, 17-18; p. 20) However, the Bankruptcy Court acted appropriately in considering the issue and concluding there was no viable claim, notwithstanding that there might be some authority from which Redmond could construct an argument. (Bankr. Ct. Op., p. 10) There is also ample authority for the Bankruptcy Court to reach its conclusion.[5] Thus, the Bankruptcy Court cannot be said to have abused its discretion, but rather it duly exercised it by considering all pertinent factors.

---

[5]    For example, disagreement over amounts claimed to be owed in the foreclosure action do not violate the automatic stay or the discharge injunction. See Mann v. Chase Manhattan Mortgage Corp., 316 F.3d 1, 3-4 (1st Cir. 2003) (assessment of fees and costs to an account alone does not violate the automatic stay where there is no overt attempt to collect, such as by a collection action or harassing communications); Guetling v. Household Financial Service, 312 B.R. 699, 703 (M.D. Fla. 2004) (assessment of fees and costs to an account alone does not violate the automatic stay where there is no overt attempt to collect, such as by a collection action or harassing communications); In re Smith, 299 B.R. 687, 692 (Bankr. S.D. 2003) (notification of obligation to pay attorneys' fees was not an overt act or demand for payment so as to violate the stay).

The Bankruptcy Court Properly Exercised Its Discretion In Finding That Redmond's Motion To Reopen Was Untimely.

Redmond also challenges the Bankruptcy Court's determination that the Motion to Reopen was untimely. Redmond argues that he could not have brought a motion to reopen sooner because he did not know exactly what the Bank was claiming until June, 2005 the Bank allegedly disclosed the exact nature of the charges in March, 1998. This argument rings hollow for several reasons. First, Redmond opposed the Bank's payoff amount continuously from March, 1998 to the present, but did not file the initial motion to reopen until July, 2005, more than seven years later. (Bankr. Ct. Op., p. 10) Second, he waited for a year after he purportedly learned about the exact nature of the Bank's claim to file the Motion to Reopen. Third, both of his motions to reopen were filed as the case in the state court was about to go to trial, indicating that they were filed more as a delay tactic than on account of legitimate bankruptcy issues.

The Bankruptcy Court Did Not Decide The Case On Its Merits.

Redmond also argues that by carefully considering all of the numerous factual details he alleged in his 15-page Motion for Sanctions that included 15 exhibits the bankruptcy court decided the merits of the Motion for Sanctions in concluding not to reopen the case. (Red. Brief, p. 23) Redmond's objection leads to the inquiry that if all of those details were not important, why did he allege them? Clearly, the Bankruptcy Court cannot be faulted for addressing "each claim Redmond sought to address in his Motion for Sanctions." (Red. Brief, p. 23) After all, this Court directed the Bankruptcy Court to consider all pertinent factors. (Dist. Ct. Op., p. 8)

Moreover, it is clear that the Bankruptcy Court is aware that it should not decide the merits on the Motion to Reopen. In In re Zurn, supra, Justice Ripple, in his dissent, quotes the bankruptcy court, Judge Wedoff presiding, as follows: ". . .the merits are a completely separate issue from the question of whether the case ought to be reopened." 290 F.3d at 865. And here,

11

the Bankruptcy Court did not decide the matter on the merits.  Rather, as with a motion to dismiss a complaint for failure to state a cause of action, the Bankruptcy Court assumed the truthfulness of Redmond's allegations and decided that Redmond stated no claims for relief under the bankruptcy law.  A bankruptcy court "should not reopen a bankruptcy case where it appears that to do so would be futile and a waste of judicial resources."  In re Carberry, 186 B.R. 401, 402 (Bankr. E.D. Va. 1995)  In the instant case, the Bankruptcy Court did nothing more than carefully and comprehensively make that determination based upon Redmond's own uncontroverted allegations.

The State Court Action Provides An Adequate Forum For Determination Of The Dispute As To The Amount Of The Debt.

Finally, Redmond objects to the Bankruptcy Court's determination that the state court is an adequate forum for resolving the dispute between Redmond and the Bank.  He boldly asserts that the Bankruptcy Court "misapprehended the nature of the claim Redmond sought to raise.. . ." (Redmond Brief, p. 26)

In so asserting, Redmond misstates the issue.  The Bankruptcy Court did not decide that the state court had jurisdiction to hear bankruptcy issues.  Rather, the Bankruptcy Court decided that there were no bankruptcy issues to consider, so that the state court can adequately resolve the dispute, under applicable nonbankruptcy law, as to what is owed by Redmond to the Bank.  Redmond's assertion flies directly in the face of the Bankruptcy Court's thorough consideration of all four of his bankruptcy related issues and its determination that he has not stated any viable claims under bankruptcy law.  (Dist. Ct. Op., 8-12)

Redmond makes no response to and does not attempt to distinguish the case law cited by the Bankruptcy Court.  In In re Elias, 188 F.3d 1162 (9th Cir. 1999), the court of appeals affirmed a bankruptcy judge's decision against reopening a case to determine entitlement to

attorneys' fees because the matter was pending before the state court and it was capable of resolving the dispute.

Nor does Redmond address the fact that the state law would be applicable to the dispute in any event. Section 1322(e) of the Bankruptcy Code provides that the amount necessary to cure a default is determined by the parties' agreement and applicable non-bankruptcy law. 11 USC 1322 (e). Similarly, Section 506(b) of the Bankruptcy Code allows for the collection of fees and costs by the secured creditor as determined by the parties' agreement or by applicable non-bankruptcy law. 11 U.S.C. 506(b).

Redmond Has Not Been Deprived of Due Process.

Redmond asserts that he has been deprived of due process of law by the Bankruptcy Court. However, he fails to develop any argument, asserting nothing more than the circular proposition that he was deprived of the right to his bankruptcy claim because the Bankruptcy Court determined that he did not state any viable claims under bankruptcy law.

CONCLUSION

The Bankruptcy Court took this Court's earlier ruling to heart. The Bankruptcy Court addressed the specific issue this Court asked it to address, and it considered the details and all pertinent factors of the Motion for Sanctions.

The Bankruptcy Court's determination was supported by careful reasoning and applicable case law. As noted by the Bankruptcy Court, the Seventh Circuit has firmly rejected the notion that "anyone who has been a debtor in bankruptcy has eternal access to federal court for all disputes related in some way to the debts handled in the bankruptcy proceeding." In re Zurn, 290 F.3d 861, 864 (7th Cir. 2002). The Bankruptcy Court did not abuse its discretion in determining that eight years after Redmond received a payoff letter with amounts he disputed, he was no

13

longer entitled to access the bankruptcy court to resolve a simple dispute as to the amount of

Redmond's debt to the Bank, a dispute that is governed by state law and that can be more than

adequately adjudicated in the state court.

FIFTH THIRD BANK, Appellee

By:    /s/    Edward J. Lesniak
            One of their attorneys

Edward J. Lesniak
Burke, Warren, MacKay & Serritella, P.C.
Attorneys for Fifth Third Bank
330 N, Wabash Avenue, 22nd Floor
Chicago, IL  60611-3607
Telephone: (312) 840-7000
Facsimile : (312) 840-7900
11002\00001\472857.1

CERTIFICATE OF SERVICE

The undersigned, Edward J. Lesniak, one of the attorneys for Appellee Fifth Third Bank, certifies that he caused the foregoing Notice of Motion, together with a copy of the Motion referred to therein, to be filed electronically. Notice of this filing will be sent by operation of Court's electronic filing system to all parties indicated on the electronic filing receipt, including Constantine Harvalis and David P. von Ebers. Notice of this filing will be served upon the following parties or persons by depositing true and correct copies of same in the U.S. Mail chute at 330 N. Wabash Avenue, Chicago, Illinois in a properly addressed envelope, with postage fully prepaid on the 20th day of June, 2008 before the hour of 5:00 p.m.:

Kenneth S. Gardner
United States Bankruptcy Court
Northern District of Illinois
219 S. Dearborn Street
Chicago, IL  60604

Eugene Wedoff
United States Bankruptcy Court
Northern District of Illinois
219 S. Dearborn Street
Chicago, IL  60604

Jordan B. Rifis
Help-U Settle Attorney Chtd.
1034 Pleasant Street
Oak Park, IL  60302

_____/s/_____ Edward J. Lesniak_____